# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JERRY MUELLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-805-M |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner Carolyn W. Colvin (Commissioner) issued a final decision denying Jerry Mueller's (Plaintiff) applications for disability insurance benefits and supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). Chief United States District Judge Vicki Miles-LaGrange referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends that the court affirm the Commissioner's decision.

## I. Administrative proceedings.

In his applications for benefits, Plaintiff alleged that his impairments became disabling in January 2007. AR 199-208. The Social Security Administration (SSA) denied Plaintiff's claims, and at his request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 29-100. In her February 2012 decision, the ALJ found that Plaintiff is not disabled. *Id.* at 23. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-5, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the ALJ will conduct a

residual functional capacity (RFC)[2] assessment at step four to determine what Plaintiff can still do despite his impairments. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff shows he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## III. Plaintiff's claims.

For sequential purposes, the undersigned addresses Plaintiff's claims in the following order. First, Plaintiff alleges that the ALJ gave conflicting weight to the state agency physicians' opinions, and failed to set forth legitimate reasons for "tacitly" rejecting the treating physicians' opinions. Doc. 13, at 7. Second, Plaintiff claims that the ALJ failed to properly evaluate Plaintiff's severe mental impairments to create a "Mental RFC." *Id.* at 10. Third and finally, Plaintiff argues that the vocational expert's (VE) testimony cannot constitute substantial evidence because the ALJ failed to inquire about allegedly apparent conflicts between the VE's testimony and

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

the job descriptions in the Dictionary of Occupational Titles (DOT).[3] *Id.* at 4-6.

The undersigned has examined all of these allegations and finds no reversible error.

### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). In determining whether substantial evidence exists, the court "will not reweigh the evidence." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). As the Tenth Circuit has cautioned, "common sense, not technical perfection, is [the court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). Finally, the court may affirm the Commissioner's decision, despite the ALJ's error, where "we [can] confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

---

[3] The Department of Labor publishes the DOT, and it is one of several publications from which the SSA "will take administrative notice of reliable job information." 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

4

## B. The ALJ's findings.

The ALJ found that Plaintiff: (1) met the insured status requirements through December 31, 2012; (2) has not engaged in substantial gainful activity since January 1, 2007; (3) has severe "status post C5-6 fusion; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; and personality disorder, not otherwise specified, with features of a depressed personality"; and (4) has no impairment or combination of impairments that meets or medically equals a "listed impairment." AR 12, 16. The ALJ then concluded that Plaintiff has the RFC to perform light exertional work with the following limitations:

> The claimant occasionally can lift and/or carry and push and/or pull 20 pounds, and frequently can lift and/or carry and push and/or pull 10 pounds, but cannot perform repetitive pushing or pulling with his non-dominant left arm or shoulder. . . . The claimant cannot perform repetitive reaching overhead with his non-dominant left arm or shoulder. . . . Due to his panic attacks, the claimant cannot work at unprotected heights. He can understand, remember, and carry out short and simple instructions. The claimant should have only minimal and superficial contact with the general public. He can do minimal travel in unfamiliar areas.

*Id.* at 18. Finally, based on the VE's testimony, the ALJ reasoned that with this RFC, Plaintiff can perform work as a "suture polisher," "bottling line attendant," or "flat work tier" – all jobs existing in significant numbers in the national economy. *Id.* at 22.

### C. The ALJ's alleged errors in weighing the physicians' opinions.

Plaintiff alleges that the ALJ erred in weighing both the state agency physicians' opinions and the treating physicians' opinions. The undersigned disagrees.

#### 1. The state agency physicians' opinions.

According to Plaintiff, the ALJ inconsistently gave the state physicians' opinions both "some weight" and "great weight." Doc. 13, at 6. Plaintiff equates "some weight" with "little weight," and "little weight" with an effective rejection, and argues that the inconsistency is a fatal error. *Id.* But as the Commissioner points out, Doc. 14, at 9-10, Plaintiff's argument misrepresents the ALJ's opinion. The ALJ gave "some weight" to the two state agency physicians' opinions regarding Plaintiff's *physical* limitations, and "great weight" to the two state agency psychologists' opinions regarding Plaintiff's *mental* limitations. AR 20. The ALJ's opinion does not assign conflicting weight to the same state agency physicians' opinions, and the undersigned finds no grounds for reversal in this argument.

#### 2. The treating physicians' opinions.

Plaintiff concedes that the ALJ discussed the medical evidence, but argues that "[n]othing was said about what the ALJ thought of [the treating

6

physicians'] opinions" so "she must have rejected them, although tacitly." Doc. 13, at 6-7. The undersigned finds no merit in this claim.

Under the treating physician rule, an ALJ must assign weight to a treating physician's *opinion* regarding a claimant's limitations. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). But when a physician's treatment notes "do not offer any medical opinions concerning [a claimant's] abilities or limitations," "there [is] no pertinent medical opinion for the ALJ to weigh." *Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013).

Plaintiff does not cite to a single treating physician *opinion* in the record – much less to one that the ALJ ignored − and the undersigned will not comb the medical record looking for such an opinion. *See Effinger v. Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (noting that plaintiff had failed to cite to pages to support his argument that the ALJ erred and holding that "it will not comb through the record where counsel has not provided specific references tied to an argument"). Absent an ignored treating physician *opinion*, the undersigned finds no grounds for reversal in this argument.

**D.    The ALJ's alleged failure to properly evaluate Plaintiff's severe mental impairments in assessing the RFC.**

Plaintiff next claims that the ALJ "failed to follow correct procedure in evaluating [the severe mental impairments]" to establish his mental RFC at

7

step four, and argues that her discussion regarding whether Plaintiff's severe mental impairments met or equaled any listed impairment does not suffice. Doc. 13, at 11-12. Plaintiff further alleges that the ALJ failed to consider the combined impact of his mental and physical limitations on his ability to work, and "did not develop any evidence regarding the mental demands of any of the potential jobs the VE offered." *Id.* at 13. Notably, Plaintiff does not point to any evidence that the ALJ allegedly overlooked or misinterpreted.

### 1. The ALJ's alleged failure to properly evaluate Plaintiff's mental RFC.

An ALJ's evaluation of a mental impairment differs at step two and step four. *See Wells v. Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013). At step two, the ALJ considers "four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* at 1068 (citation and internal brackets omitted). However, "'[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.'" *Id.* at 1069 (citation omitted). As part of that RFC assessment, the ALJ must generally consider the claimant's work-related mental limitations, such as the ability to: "'understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a

8

routine work setting.'" *Id.* (citing SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996)). The RFC portion of the analysis must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Id.* at 1065 (emphasis omitted).

At step two, the ALJ conducted a thorough analysis of the medical evidence and Plaintiff's subjective complaints. AR 14-16. Then, the ALJ assessed Plaintiff's limitations in four broad functional areas – daily living activities; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* at 17-18. During that discussion, the ALJ noted that Plaintiff: (1) can drive, go out alone, shop in stores, and "do[] all the yard work and much house work"; (2) can interact with people enough to coach children's wrestling and attend group therapy; and (3) showed no short-term memory loss and can manage his money. *Id.* at 17. The ALJ then stated that her assessment had been intended to satisfy the requirements at steps two and three, plus the more detailed assessment required at steps four and five. *Id.* at 18.

At step four, the ALJ again examined Plaintiff's subjective testimony and compared it with the state agency psychologists' findings. *Id.* at 19-20. Those psychologists opined that Plaintiff can "perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, and can adapt to a work situation." *Id.* at 20. The ALJ also

9

acknowledged that the psychologists believed Plaintiff "cannot relate to the general public." *Id.* Based on this evidence, the ALJ assessed Plaintiff's mental RFC:

> Due to his panic attacks, the claimant cannot work at unprotected heights. He can understand, remember, and carry out short and simple instructions. The claimant should have only minimal and superficial contact with the general public. He can do minimal travel in unfamiliar areas.

*Id.* at 18.

Again, Plaintiff neither complains that the RFC reflects no specific mental limitation, nor points to any evidence that the ALJ ignored. And, the ALJ conducted a well-documented and thorough analysis at steps two and three, and reexamined the medical evidence and Plaintiff's testimony at step four. "Taking 'common sense, not technical perfection,'" as a guide, the undersigned finds "that the ALJ conducted a mental RFC assessment separate from the . . . determination made at step two." *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (rejecting plaintiff's claim that the ALJ did not properly analyze his mental RFC at step four where the ALJ discussed the medical evidence and employed no language suggesting that he had only relied on the step two findings) (citing *Keyes-Zachary*, 695 F.3d at 1167)). So, the undersigned finds no grounds for reversal in this argument.

### 2. The ALJ's alleged failure to consider the combined impact of Plaintiff's impairments or develop evidence regarding the mental demands of work that the VE testified he can perform.

The undersigned likewise finds no merit in Plaintiff's arguments that the ALJ failed to consider his impairments in combination or develop evidence regarding the mental demands of the jobs that the VE testified Plaintiff can perform.

The ALJ opined that Plaintiff has both physical and mental limitations and fashioned the RFC accordingly. AR 18; *see also, e.g., Williams v. Colvin*, 524 F. App'x 414, 418 (10th Cir. 2013) (noting that by definition, "[t]he RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment *or combination of impairments*, including the impact of any related symptoms" (emphasis added)). The ALJ then asked the VE whether a hypothetical claimant with *all these limitations* can still perform work in the national economy. AR 22, 92-93. The VE testified that such an individual, *suffering from the same physical and mental limitations*, could perform jobs as a "suture polisher," "bottling line attendant," or "flat work tier." *Id.* at 92-94. This question fulfilled the ALJ's duty because:

> At step five of the sequential analysis, an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform. This approach, which

requires the VE to make his own evaluation of the mental and physical demands of various jobs and of the claimant's ability to meet those demands despite the enumerated limitations, is acceptable at step five because the scope of potential jobs is so broad.

*Krauser*, 638 F.3d at 1333 (quotation omitted).

In sum, Plaintiff does not point to any impairment that the ALJ did not consider, and the VE testified that Plaintiff can perform the relevant jobs with his combined physical and mental limitations. The undersigned finds no grounds for reversal.

### E. The ALJ's failure to inquire about any conflicts between the VE's testimony and the job descriptions in the DOT.

Plaintiff also alleges legal error in the ALJ's failure to ask the VE whether her testimony conflicted with the job descriptions in the DOT, and according to Plaintiff, there was a conflict. Doc. 13, at 4-6. The Commissioner conversely argues a lack of actual conflict, negating the need for reversal. Doc. 14, at 5-8. The undersigned agrees with the Commissioner.

"[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999). However, absent any actual conflict, the ALJ's failure to make such

an inquiry is harmless. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts.").

During the hearing, the ALJ asked the VE to consider a hypothetical claimant with "no repetitive push or pull with the left arm or shoulder, no repetitive reaching with the left – overhead reaching." AR 92-93. The VE confirmed with the ALJ that the limitation was for "overhead" reaching, *id.*, and Plaintiff clarified for the VE that he was right-handed. *Id.* at 94. The ALJ's question aligns with Plaintiff's RFC, which limits him to no "repetitive pushing or pulling" or "repetitive reaching overhead" with his non-dominant arm. *Id.* at 18. The VE testified that such a claimant can perform the jobs of "suture polisher," "bottling line attendant," and "flat work tier" and gave corresponding DOT job description numbers. *Id.* at 94.

The ALJ did not ask the VE whether her testimony conflicted with the DOT's job descriptions, *id.* at 92-97, that was legal error. However, the undersigned finds that absent any actual conflict, the error is harmless.

Plaintiff argues that conflict exists because "[t]he ALJ said no repetitive motion with the non-dominant extremity and the jobs listed by the VE all require *frequent* reaching and handling (with no distinction as to

13

dominant or non-dominant extremity) according to the DOT." Doc. 13, at 4-5 (emphasis in original).[4] However, the DOT "does not separately classify overhead reaching[,]" so "even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching." *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007). Under such circumstances, the undersigned finds no actual conflict between the VE's testimony and the DOT job descriptions. *See id.* (holding that because the DOT does not define the type of reaching required, "the VE's testimony does not conflict with the DOT . . . so much as it clarifies how [its] broad categorizations apply to this specific case"); *Musgrave v. Astrue*, No. CIV-09-1276-D, 2010 WL 3749428, at *5 (W.D. Okla. Aug. 23, 2010) (unpublished recommendation) ("[T]he DOT does not address whether bilateral fingering and handling are required in the job of counter clerk photo finishing, and thus, no actual conflict between the vocational expert's testimony and the DOT has been shown."), *adopted* by 2010 WL 3749432 (W.D. Okla. Sept. 21, 2010) (unpublished order).

Absent any actual or apparent conflict, the undersigned finds that the ALJ's failure to inquire about such a conflict with the VE is harmless error. *See Poppa*, 569 F.3d at 1173; *see also Allen*, 357 F.3d at 1145.

---

[4] In a one-sentence argument, Plaintiff also complains the VE should have explained how Plaintiff could perform any of the jobs "with one hand." Doc. 13, at 5. As the RFC limitations discussed above clearly demonstrate, Plaintiff is *not* limited to using only one hand.

14

**IV. Recommendation and notice of right to object**

For the reasons discussed above, the undersigned recommends that the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation by the 8th day of July, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 18th day of June, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE